UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Kendra Haley,** | Civil Action No.:_____ |
| **Plaintiff,** | |
| v. | COMPLAINT |
| **Freedom Financial Asset Management, LLC d/b/a Achieve Personal Loans, f/k/a Freedom Plus,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## COMPLAINT

1. This is an action brought by Plaintiff, Kendra Haley, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA"). Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in

1

a credit report." S. Rep. No. 91-517 (1969).

4.  To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

5.  One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.  The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7.  This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

2

§1681p, and 28 U.S.C. §1331, §1332, and §1367.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Kendra Haley, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Freedom Financial Asset Management, LLC, d/b/a Achieve Personal Loans, f/k/a Freedom Plus ("Achieve") is a Delaware company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting St., West Columbia, SC 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

## FACTUAL ALLEGATIONS

11. On or about October 14, 2022, Plaintiff's life as she knew it became non-existent as she discovered that her husband, Kyle Haley, had a gambling addiction and, in order to feed said addiction, had been opening fraudulent lines of credit in Plaintiff's name without her knowledge or consent. Specifically, Kyle opened a Loan, Loan number APP-08739812, (hereinafter referred to as the "Loan"), with Defendant on March 23, 2021, in the amount of $30,000.00. Said Loan began reporting as past due on Plaintiff's credit reports as of September 2022.

12.     On October 15, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office regarding this Loan being fraudulently opened in her name, as well as several other accounts.

13.     On October 20, 2022, Plaintiff called Defendant and informed them that the Loan had been fraudulently opened in her name without her knowledge or permission.

14.     On October 21, 2022, Plaintiff faxed Defendant a copy of the police report regarding the theft of her identity and the opening of this fraudulent Loan.

15.     On or about October 24, 2022, Defendant sent Plaintiff a reminder letter that the Loan was 80 days past due.

16.     On October 28, 2022, Plaintiff filled out and submitted a Federal Trade Commission ID Theft Report.

17.     On November 9, 2022, Plaintiff emailed Defendant and attached a copy of the police report.

18.     On or about December 2, 2022, Plaintiff sent a dispute letter to TransUnion stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First TransUnion Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. TransUnion received this dispute on December 19, 2022, and forwarded same to Defendant.

19.     On or about December 2, 2022, Plaintiff sent a dispute letter to Experian stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First

4

Experian Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Experian received this dispute on December 19, 2022, and forwarded same to Defendant.

20. On or about December 12, 2022, Plaintiff sent a dispute letter to Equifax stating the Loan had been fraudulently opened in Plaintiff's name without her authorization ("First Equifax Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Loan, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number.

21. On or about December 25, 2022, in response to the First Equifax Dispute, Equifax sent Plaintiff correspondence in which Equifax stated it could not locate Plaintiff's credit file and so, in order to provide further assistance, Equifax needed a copy of Plaintiff's driver's license and Social Security card. Plaintiff complied with Equifax's request and mailed the sought after information via certified mail. On or about January 18, 2023, Equifax received the requested information and forwarded the First Equifax Dispute to Defendant.

22. On or about January 5, 2023, Defendant responded to Experian's ACDV verifying the disputed information on the Loan was accurate and updating some additional information. As a result of Defendant's response to Experian, the fraudulent Loan continued to report on Plaintiff's Experian credit report as a derogatory account belonging

5

to her.

23. On or about January 10, 2023, Defendant responded to TransUnion's ACDV verifying the disputed information on the Loan was accurate and updating some additional information.

24. On January 11, 2023, Plaintiff received the results of Trans Union's investigation into the First TransUnion Dispute verifying that Defendant had verified the disputed information as accurate. As a result, the fraudulent Loan continued to be reported as a derogatory account belonging to Plaintiff on her TransUnion credit report.

25. On or about January 13, 2023, Defendant responded to Equifax's ACDV verifying the disputed information on the Loan was accurate and updating some additional information.

26. On or about January 20, 2023, Plaintiff received the results of Equifax's investigation into the First Equifax Dispute. As a result of Defendant's verification of the Loan as accurate, the fraudulent Loan continued to be reported as a derogatory account belonging to Plaintiff on her Equifax credit report.

27. On or about January 20, 2023, Defendant sold the Loan to Axiom Acquisition Ventures, LLC (hereinafter "Axiom"), as belonging to Plaintiff. Thereafter, Axiom assigned, transferred, and/or conveyed the Loan as a charged off debt to Spire Recovery Solutions for collection.

28. On January 26, 2023, Spire Recovery Solutions sent a debt collection letter to Plaintiff demanding payment in the amount of $26,248.93 on the fraudulent Loan. Plaintiff was absolutely terrified that the Loan had now been sent to a debt collector.

29.     On February 16, 2023, Plaintiff emailed Spire Recovery Solutions and attached a copy of the police report she filed regarding the fraudulent Loan. On February 17, 2023, Spire Recovery Solutions emailed Plaintiff confirming receipt of her dispute and informing her that it would notify Axiom.

30.     On or about February 28, 2023, Plaintiff sent a second dispute to Equifax again stating that the Loan had been fraudulently opened in Plaintiff's name without her knowledge or permission ("Second Equifax Dispute"). With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 7, 2023, Equifax received the Second Equifax Dispute and forwarded same to Defendant.

31.     On or about February 28, 2023, Plaintiff sent a second dispute to TransUnion stating that the Loan had been fraudulently opened in Plaintiff's name without her knowledge or permission ("Second TransUnion Dispute"). With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 6, 2023, TransUnion received the Second TransUnion Dispute.

32.     On or about February 28, 2023, Plaintiff sent a second dispute to Experian stating that the Loan had been fraudulently opened in Plaintiff's name without her knowledge or permission ("Second Experian Dispute"). With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 6, 2023, Experian received the Second Experian Dispute and forwarded same to Defendant.

33.     On or about March 9, 2023, Plaintiff received correspondence from TransUnion in which TransUnion stated it would not be further investigating Plaintiff's dispute of Defendant's Loan as Defendant had already verified the Loan as accurate.

34. On or about March 13, 2023, Plaintiff received the results of Equifax's investigation into her Second Equifax Dispute wherein Equifax informed Plaintiff that Defendant had again verified the Loan as belonging to Plaintiff and had modified additional information. As a result, the fraudulent Loan continued to be reported as a derogatory account belonging to Plaintiff on her Equifax credit file.

35. On or about March 14, 2023, Defendant responded to Experian's ACDV verifying the disputed information as accurate and updating account information that was unrelated to the dispute. As a result, the fraudulent Loan continued to be reported as a derogatory account belonging to Plaintiff on her Experian credit file.

36. On or about March 27, 2023, Plaintiff sent another dispute to Equifax which again stated that Plaintiff had been the victim of identity theft and fraud and that the Loan was not her account ("Third Equifax Dispute"). With this dispute, Plaintiff included the police report she filed which stated that Plaintiff's husband had taken out this Loan, as well as several other loans, in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted these actions in a "three-page paper" and that same had been taken into evidence. On or about April 4, 2023, Equifax received the Third Equifax Dispute and forwarded same, including a copy of the police report, to Defendant.

37. On or about March 27, 2023, Plaintiff sent another dispute to TransUnion which again stated that Plaintiff had been the victim of identity theft and fraud and that the Loan was not her account ("Third TransUnion Dispute"). With this dispute, Plaintiff included the police report she filed which stated that Plaintiff's husband had taken out this Loan, as well as several other loans, in Plaintiff's name to fund his gambling addiction. The police

report stated that Plaintiff's husband had admitted his actions in a "three-page paper" and that same had been taken into evidence. On or about April 3, 2023, TransUnion received the Third TransUnion Dispute and forwarded same, including a copy of the police report, to Defendant.

38.     On or about March 28, 2023, Plaintiff sent another dispute to Experian which again stated that Plaintiff had been the victim of identity theft and fraud and that the Loan was not her account ("Third Experian Dispute"). With this dispute, Plaintiff included the police report she filed which stated that Plaintiff's husband had taken out this Loan, as well as several other loans, in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted his actions in a "three-page paper" and that same had been taken into evidence. On or about April 3, 2023, Experian received the Third Experian Dispute and forwarded same, including a copy of the police report, to Defendant.

39.     On April 7, 2023, Defendant responded to Experian's ACDV verifying the disputed Loan information as accurate and updating the Loan to show it had been sold to Axiom. As a result, the fraudulent Loan continued to be reported on Plaintiff's Experian credit reports as a charged-off account belonging to Plaintiff.

40.     On April 8, 2023, Plaintiff received the results of Equifax's investigation stating Defendant had verified the Loan as belonging to Plaintiff and updated the Loan to show it was sold to Axiom. As a result, the fraudulent Loan continued to be reported on Plaintiff's Equifax credit reports as a charged-off account belonging to Plaintiff.

41.     On April 12, 2023, Defendant responded to TransUnion's ACDV verifying the disputed Loan as accurate.

9

42. Thereafter, on or about April 20, 2023, Plaintiff received TransUnion's Investigation Results confirming Defendant had again verified the disputed Loan as accurate. As a result, the fraudulent Loan continued to be reported on Plaintiff's TransUnion credit report as belonging to Plaintiff and being a delinquent, charged-off debt.

43. Defendant received at least seven (7) ACDVs from the consumer reporting agencies regarding Plaintiff's dispute of the Loan as fraudulent, and three of those disputes contained a copy of the police report. Despite receipt of multiple copies of Plaintiff's dispute and the police report, Defendant continued to verify the fraudulent Loan as belonging to Plaintiff.

44. From March 2021 through at least August 2023, Defendant continued to inaccurately report and verify the Loan as belonging to Plaintiff. Additionally, Defendant continued to report the Loan as a delinquent, charged-off debt with a balance of $27,774.

45. From March 2021 through at least August 2023, Defendant reported false, libelous, and defamatory information regarding the Plaintiff to the national credit bureaus and to numerous third parties including Axiom and Spire Recovery Solutions. While Defendant was reporting the fraudulent Loan as belonging to Plaintiff on all of her credit reports, said information was provided to and/or viewed by Allstate Insurance, Nationstar Mortgage, LLC, Crown Asset Management, Velocity Portfolio Group, JPMCB, SOFI Lending, USAA Federal Savings Bank, Citibank, MUSC Health, LexisNexis, Axiom Acquisition Venture, Boykin Home Mortgage, LLC, Finance MA, Credit Central, Polaris Home Funding Corp., Admiral Home Mortgage, LLC, First Heritage Credit, ADR/EMM Loans, Clarity Services, Inc., Happy Money, Inc., One Main Financial, Lending Point LLC, Net Credit FS, Upstart Network Inc., IR/Simple Path Financial, Credit One Bank, Bank of

America, and many others.

46. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

47. The Plaintiff adopts the averments and allegations of paragraphs 11 through 46 hereinbefore as if fully set forth herein.

48. Defendant violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.

49. On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

50. On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

51. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, increase in insurance costs, feelings of hopelessness, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of

11

life, physical sickness including a dramatic rise in blood pressure, physical pain and mental anguish.

52. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

53. Defendant completely failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA. Instead, Defendant simply verified the Loan each and every time it received an ACDV regarding Plaintiff's dispute of the Loan as fraudulent.

54. The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

55. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

56. The Plaintiff adopts the averments and allegations of paragraphs 11 through 55 hereinbefore as if fully set forth herein.

57. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit files with the credit reporting agencies

by failing to correctly report results of an accurate investigation to each credit reporting agency.

58.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

59.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Loan the subject of this action was inaccurate, incomplete, false, and misleading.

60.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, increase in insurance costs, feelings of hopelessness, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness including a dramatic rise in blood pressure, physical pain and mental anguish.

61.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

62.    The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
**(Defamation, Libel and Slander)**

63.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 62

hereinbefore as if fully set forth herein.

64.    Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large.  Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish, and emotional distress.

65.    Said communications were false in that Plaintiff was not indebted to Defendant. Plaintiff did not owe any balance on the Loan the subject of this action as said Loan was clearly fraudulent.

66.    Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff.  Specifically, Defendant reported the Loan to the national credit reporting agencies as belonging to Plaintiff so the Loan would appear on Plaintiff's credit reports.  Plaintiff's credit reports were viewed by numerous third parties as set out above and Plaintiff's cost of insurance increased.  Defendant also sold the Loan to Axiom and, at the time of the sale, represented to Axiom that the Loan was opened and owed by Plaintiff.

67.    Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Loan the subject of this action.

68.    At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

69.     As a result of Defendant's intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to her reputation in the eyes of her community and the public at large, and was forced to endure credit reporting of the Loan in spite of the fact that Plaintiff did not owe the Loan as it was fraudulently opened in her name without her knowledge or permission.  Plaintiff was also forced to endure collection efforts by Axiom and Spire Recovery Solutions.

70.     As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to have to endure collection efforts on the fraudulent Loan, to have her insurance costs increased, and made to suffer humiliation, anxiety, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which she claims compensatory and punitive damages.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.      Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.      Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.      Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.      For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's defamation of Plaintiff;

E.  For this trial to be heard by a jury; and

F.  For all such other and further relief as the Court may deem just and proper.

>   */s/ Penny Hays Cauley*
>   Penny Hays Cauley, Fed. ID No. 10323
>   Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

>   */s/ Penny Hays Cauley*
>   Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**

Freedom Financial Asset Management, LLC d/b/a Achieve Personal Loans
c/o Corporation Service Company, Registered Agent
508 Meeting St.
West Columbia, SC 29169